The next case called is number 122034, Agenda number 2, People v. Pepitone. Mr. Paland, are you ready? Yes, sir. And Appolini, are you? You may proceed. Good morning, Your Honors. Counsel may please be seated. This case involves a facial substantive due process challenge to Section 9.4-1B of the Vulnerable Victim Offenses article, which makes it a misdemeanor for a child sex offender to knowingly be present in a public parlor. This court should reject the challenge, the most difficult constitutional challenge to mount successfully, because the differential rational basis test asks only whether this statute bears a rational relationship to a legitimate legislative purpose. I may have missed it, but did you identify yourself? Did I forget to do that? I apologize. I'm not sure. I must have. I'm Elder Malamuth from the Assistant Attorney General on behalf of the people. Thank you. And I may have missed it. I'll blame myself on that one. So in this case, there's no dispute that protecting children from sex offenses is legitimate. The only dispute is whether statistics support or adequately support the self-evident rationale that it protects children to keep child sex offenders out of parks, where children play often alone or in small groups in areas that allow for both contact and isolation. But this court has made clear that the General Assembly need not have statistics to bolster its rationale. And in any event, while statistics are sometimes conflicting, they in fact support the General Assembly's reasoning. Now, it is tempting in this case to look past the standards by which we must review the statute and proceed to a debate about whether we believe the statute is ideally constructed or whether we believe it is conceived in a way that balances just so the respective benefits versus the harms. But we can't do that. This is a facial challenge. Now, that means there's a strong presumption that the challenger must rebut, a strong presumption that the statute is constitutional. A facial challenge means that the statute is invalid only if no set of circumstances exist under which the statute would be valid. So that's already one layer of deference. Then we proceed to the rational basis test. Now, here it is important to note that there is neither a suspect classification nor a fundamental liberty interest involved. If either of those were the case, we'd have a more exacting level of scrutiny applied. But neither is the case. And so the statute will be upheld as long as it bears a rational relationship to a legitimate state interest. Mr. Malmoth, how can the statute be rationally related to protecting children from sex offenders when there's absolutely no requirement that the children be actually in or even near the park property? Well, Your Honor, it's rational because children often play in parks. That's the only possibility. There's nothing in the statute that says children should be near or play in the park. Well, that's certainly the case. But just the way we might imagine, for instance, that it might present a danger if a child sex offender operated an ice cream truck, which is a law. And we said, well, in any case, if there's not a child who happens to be buying ice cream at that exact moment, is there a danger? Well, sure there is a danger because a child may be walking down the block about to approach that ice cream truck. The fact that there's not a danger every single moment in every single park is irrelevant. And this has to do with defendants. But that would mean that even Soldier Field, Starved Rock, or anything, sex offenders can't go to those places. Well, first of all, Your Honor, again, we have to step back. And it says, is there some circumstance in some park, Soldier Field, Starved Rock, at some particular point when there are no children? And if that's the case, then does that mean the statute is irrational? No. There are many places where there are plenty of children in Starved Rock or in Soldier Field or in any of the other parks that are affected by the statute. And that's why it's rational to prevent child sex offenders from being in those parks. We don't have to say there's, for instance, if drunk driving is a, we can say it's an inherently risky situation. It doesn't have to be that there's every single time someone drives while intoxicated, there's an accident. It doesn't have to be, or for bringing a firearm into a courthouse. It doesn't have to be every single time someone brings a firearm to a courthouse, there's going to be shooting, some sort of crime. We can say that it's an inherently dangerous situation. It's rational to avoid those situations. But certainly, I'm interested in what is the role of the court in all of this? And certainly, what is the role of the court in relation to the role of the legislature? That's an important discussion that's going on here. But certainly there are, you would agree, that there have been statutes that have been found to not have that rational relationship. Right? There's sometimes that it just goes too far. Correct? There are certainly cases where statutes are irrational. Okay. So help me figure out, how does the court analyze this? What steps should the court go through to determine whether or not there is this appropriate relationship in the rational basis test? Sure. Well, there are a couple of different ways we can approach this. We, first of all, of course, can look at the words. What does it mean to be rational? It means to be in accordance with reason, in accordance with logic. And we can ask, is it rational, is it logical, to keep child sex offenders away from where children play in potentially vulnerable situations? We can also look at other cases. We can look at the closeness of the, how close the nexus must be, how often the harm must be to the rational. We can look at a case, for instance, like Pollens. And we can think, okay, in that case, there were photographs taken of a 17-year-old. And it was perfectly legal for the individual to have sexual intercourse with this 17-year-old. But it wasn't illegal to take pictures. And the argument was, well, that's irrational, because if the activity is legal, then taking pictures of it should be fine. And this court said, no, no, that's not right. And not only that, not only are we not, and we're not even going to accept the fact that these pictures were never distributed, were never intended to be distributed, because there was a risk. There was a substantial risk that those pictures, there's no guarantee, that was the court's words. There's no guarantee that the pictures would remain private. So we know, we identify risk, legitimate risk. And then the issue before the court would be how broadly can the legislature act to minimize that risk. Here we have Parks. And Pollens has written in her brief all of these suggestions that, certainly in the city of Chicago, that would mean a sex offender could not go to a Bears game, couldn't go to the Art Institute, couldn't take the 153 bus, couldn't take an adult education class, couldn't do this, couldn't do that. So the question is, for example, could the legislature say there is a risk of recidivism of sex offenders, therefore sex offenders may not enter public buildings where there are families, churches. How far can the legislature go before it becomes irrational? Well, we have to look at a few different things. And, of course, there are many steps in that analysis. One thing we have to look at is whether there's a suspect classification or a fundamental interest. We're talking about rational basis. Right, but in some of your examples, for instance, there might be a fundamental interest. And, again, we're not talking about hypotheticals, so it's hard to say, but you might have a fundamental interest in religious activities. So there are a whole bunch of steps along these sorts of hypotheticals that you have to take before you come to the appropriate analysis. And, for instance, out of those examples given, you would have to look at the statute, first of all, and determine whether we didn't go through every single one of the examples, determine whether those actually are public parks. Some of them might just be on land that is governed by a certain park, a certain municipal organization. They might not fit under the statute. But, in any event, whether it's actually... Wait a minute. Isn't Soldier Field part of the Chicago Park District? I believe so. Isn't the Art Institute part of the Chicago Park? I believe it's on public park land. Yes, it's a lease. But the question would be whether... You would have to, first of all, go through those steps. Is this under the statute? We can have, first of all, as-applied challenges as opposed to facial challenges. So if there's some sort of as-applied challenge to participating in going to a political rally as a First Amendment challenge, you might be able to raise that as a First Amendment challenge. And if you're going to Grant Park for a presidential inauguration, you might be able to protest that. You might have a First Amendment challenge to that particular application. You might have an as-applied challenge. So when we're talking about... We can pick out, again, these specific examples. But that's not the question of facial challenge. And it's not the question of rational basis review. And the question of whether something could potentially go too far. How far can they go? First of all, that's not the question in this case. This is public park. There's a tight nexus. This is not a case where the legislature made a law that child sex offenders can't wear red because we're worried that children like the color or something. We have to question these assumptions. We can safely say it's a rational assumption and it's a rational conclusion to say children like ice cream. We're going to keep child sex offenders from running ice cream trucks. That's the law? That's part of the law? I believe so, yes. Okay. Can I ask you one last question? A little bit about statistics because we have a lot of statistics in this case and how the court is supposed to use statistics. Have you provided any data that show that after the passage of this law, that there's been a decrease in sexual violence towards children? Well, Your Honor, that raises a great point in two ways. First of all, of course there's no such data because no such data can really exist. This asks the question of what kind of data can we have in terms of control groups. We can't run the perfect experiment. We can't separate Illinois in half and say in this half of the state we're going to run it this way. In this half of the state we're going to run it that way. We're going to see what kind of effects we have. Those sorts of data analyses are limited. That's exactly one of the reasons why we can't require that kind of data from legislatures before enacting statutes. We simply can't run those sorts of stats. And there wasn't a control group beforehand. So, for instance, even if we determined, well, since the enactment of legislation against the appearance of public parks, the recidivism rate has been 5 or 6%. That's not the number that seems to be used. And we say, well, that's low. Well, first of all, that's not low. It might not be as high as some, you know, it's a subjective thing, whether that's low or high. It might not be as high as some of the stats used or some of the other studies have found. But it's not necessarily low. But then we don't have that before and after study. We don't know what the effect is. And, in fact, as we point out in our brief, there's some estimates to say, for instance, that the number of sexual assaults in the last couple hundred years has actually not gone down, despite various laws, which we might not call irrational in terms of being able to prosecute those laws. And it's very tough to say what we should do with stats. Do you have statistics in the council that show where the sexual assaults take place? Parks, schools, places like that? Sure. There are stats which... Absolutely. And if you look, first of all, again, the stats aren't as safe. So there's the rationale that children play in parks. But the stats do support that. The stats, which, again, we cite in our brief, state that the most common non-residential sites of sexual offenses against children include fields and woods. The General Assembly hasn't banned child sex offenders from being in residences. That might be very hard to do. Maybe they've determined that that's... And they're balancing. It's not a wise course of action. So parks, fields, woods. These are the next on the list, along with schools, which is also another statute. Of which... Where sex offenses occur. And these are... So the stats, though, one point to make is that these stats are where the sex offenses that resulted in convictions occur. And so, of course, as the U.S., as the Department of Justice programs, they put out a sex offender management assessment and planning initiative. And they said, quote... This was a 2014 report by the DOJ. And they said there's, quote, universal agreement in the scientific community that the observed recidivism rates of sex offenders are under estimates of actual reoffending. And so whatever stats we look at, whatever numbers we're looking at, those stats, there's universal agreement, according to this report, that they are under estimates, that the actual numbers are much, much higher. And we can look at some of the reasons why. There's only a small percentage of these offenses which are reported. Only a small percentage of the reported offenses are prosecuted. And only some of those result in convictions. So, for instance, if we look at the state studies that the amicus relies on, and they say, well, in Wisconsin, there were only 6%, whatever the exact number is, of released child sex offenders where there was recidivism. Well, what does that mean? They only counted the number of released child sex offenders who were then reconvicted in Wisconsin. So this didn't count any offenses that went unreported. It didn't count any offenses that were reported but then didn't lead to conviction. It didn't count any convictions that might have occurred in Illinois, Minnesota, or anywhere else. And so when we look at these statistics, it's important to remember their limitations. And that's one reason why an advantage is looking at what are sometimes called meta-analyses. And these take many studies, and they have the advantage of using different methods and taking a larger data set. And so any meta-analysis is more reliable than any one particular study. My question is, who has the burden to show this reasonable relationship or the lack thereof? Well, it's presumed constitutional, and the challenger has the burden of showing clearly that it's irrational. And so, again, in this case, stats are completely unnecessary because it's really a self-evident rationale. Children play in parks. It makes sense to keep child sex offenders away. How about other felons? Should we keep other felons out of parks? Well, first of all, of course the rationale, if you're trying to protect children, would make more sense, even more rational, to protect, to prevent child sex offenders than someone who has committed an offense that has nothing to do with children. Should we keep people who have been convicted of domestic violence out of parks? Well, Your Honor, when we say, again, we, are you talking about the legislature? That's a policy decision. That's a policy decision. Would that statute stand up to rational basis? If anyone is convicted of domestic violence cannot enter a park. Your Honor, of course, it's hard to speculate whether that specific statute, we'd have to look at, first of all, the legislature's purpose in that. If the purpose is protecting children, we'd have to ask, is it rational? Is it rational to protect children by keeping violent, people who have committed violent acts against their own families, out of parks? Probably yes, that would be rational. That just shows how within the pounds of rationality this case is. This case isn't even something that you'd have to think twice about. This case is self-evidently rational. And the only question is just how much the stats back up. And that's, again, a question that's not even appropriate. But the stats do, in fact, back up. You look at the numbers there. For instance, that DOJ initiative, they're quite high. And, you know, again, the stats might sometimes be conflicting. I mean, is that the kind of review of legislative policy that courts are in the business of making? I see my time's up. So for those reasons and the reasons I briefly would ask the court to reverse the judgment. Thank you. Thank you. Good morning, Your Honors. Counsel. My name is Catherine Stroll. I represent the Defendant, Mark Pepitone. May it please the Court. Your Honors, we're here today to examine the constitutionality of a statute that permanently prohibits anybody labeled a child sex offender or sexual predator from ever touring the Art Institute, running the Chicago Marathon, disembarking the Metra train at Millennium Station, or merely being in a public park and enjoying its amenities. Those are just a few examples of the countless activities that are off-limits to the subclass of people to whom Section 11-9.4-1b applies. And that's because, as we know, the statute makes it permanently illegal for a child sex offender or sexual predator to ever step foot on park land or on a building on public park land, any trailway, bikeway conservation area throughout the entire state of Illinois, regardless of whether a person is present, much less a minor, or even likely to be present, and regardless of the purpose of the person being on this property or in one of the buildings on the property, without exception. It now falls to this Court, under the Rational Basis Standard of Review, to determine whether the statute's rationally related to a legitimate government interest or instead whether it's arbitrary or irrational. And Defendant is quite aware that the Rational Basis Standard of Review is highly deferential to the legislator, but it is not toothless, so much so that our Supreme Court recently cautioned in Packingham v. North Carolina that while it is clear that a legislator may pass valid laws to protect children and other sexual assault victims, the assertion of a valid government interest cannot, in every context, be insulated from all constitutional protections. The role of judicial review is especially paramount in this particular context, where on the one hand, we have a group of politically powerless and uniformly hated people, and on the other, we have people in positions of power, politicians, who have admitted that the reason they were going to, in the House debate, uphold this law is because it's, quote, good legislation to win elections. And even those who expressed the gravest concerns about the legality of the statute, stating there's just no nexus between banning child sex offenders from all parkland and preventing child victimization and a number of other quotes that were included in the brief, even the members who both voiced the most concerns admitted they were still going to vote for the statute. They didn't want to take a political hit. So, I mean, that's what we're deferring to here. They're concerned with hopefully being reelected. Should we all be concerned with the fact that we're talking about protecting little kids? Of course protecting children is a legitimate government interest. The problem with the statute is that it has really little to no connection with protecting children. Child victimization doesn't, the statistics actually, although they're somewhat irrelevant, do favor our argument in showing the unreasonableness of the statute. Statistics show that 77% of child victimization occurs in a residence, either in the home of the victim or of the victim's friend. Meanwhile, only 7% of sex offenses committed against children are committed by strangers. 93% are committed by a family member or a close acquaintance. So is it not a legitimate exercise of legislative power to criminalize certain conduct based upon a person's status? In this case, it's a sex offender. Yes, I mean, the legislature certainly has targeted a subgroup of people. The issue is whether the method used, the third step in the rational basis analysis that this court is outlined with, and then Stork and then Dieselhorst. Under the third step, the question is, is this method reasonable? And this court has repeatedly held, under your innocent conduct line of precedent, that when a statute potentially punishes or prohibits innocent conduct entirely unrelated to the statute's purpose, the statute is unreasonable and violates due process. Is this case similar to the Madrigal line of cases, innocent conduct? The legislature here didn't ban the general public from going into public parks. That would be a ban on innocent conduct in normal circumstances. But instead it banned what arguably are the worst sort of sex offenders, child offenders and sexual predators, from going into public parks. How does the innocent conduct line of cases relate to this? I'm not sure how being present in a park isn't entirely innocent in and of itself. But you're taking out the people who are said they couldn't be in the park. I'm sorry? Isn't this more akin to a felon not being able to carry a weapon or someone with a blood alcohol level of .08 not being able to drive a car? Not to someone generally not just being able to be in a park. These are sexual predators, convicted sexual predators not being able to be in a park. These are people who were convicted of a sex crime who paid their penalty to society and are now having more punishment inflicted upon them without any rational relationship. We have a statute on the books, Justice Thomas, that speaks exactly to what the statute is intending to do. That statute, 11-9.3A10, prohibits a child sex offender from approaching, contacting or communicating with a child in a park unless that sex offender's own child is present. That statute, which exists, is targeted. It's much more reasonable than ours. It's targeted to the harm it's designed to prevent. The statute that we're challenging, it's just this blanket banishment and this blind imposition without considering. I think when people think of parks, they think of grassy areas. Parks have playgrounds and that's where kids play. Parks are so much more than just these grassy areas and places with playgrounds. They are all of the examples listed in the brief which were researched and are on public park property. The cultural, familial, political ramifications of the statute are basically immeasurable. It does impact First Amendment. What if we involved our sex offender registration analysis to this case? How would that apply or not apply to this case? I'm not sure which analysis to the registry. What about sex offender registration laws? Would your argument pertain to that as well? I haven't. The sex offender registration laws, there are a huge number of them. I mean, SORA has probably over 30 or 40 restrictions, provisions, limitations. I would have to go look at each and every single one to make a determination as to whether I believe they are constitutional. I think that many of those are targeted or better aimed at the harm that they're designed to prevent. This statute, the sweep is so extraordinary. The reason the method, the third step that this court outlined for rational basis review, the reason the method is unreasonable is because of the breadth of the statute. We see problems with the breadth of the statute when we look at how child victimization occurs, where it occurs. It doesn't occur in parks and it doesn't occur by strangers. It happens in homes by family members. So the statistics already sort of pose problems. With respect to the statistics, the fact that 25% per year figures re-offend, is that supposed to be a comforting statistic? That's not for my figure. My figure is 3 to 5%. I relied on the most comprehensive study to date, the 1994 Langham study, which is uniformly recognized to be the most comprehensive since it covers such a huge group of people. But I am absolutely not debating that the statistics on recidivism vary and that the state did move them up to 25%. Even if we say 25% of sex offenders re-offend, that leaves the majority not re-offending. Then we'd have to say, of those people re-offending, are they the 7% of strangers that commit sex offenses and are they also part of the 8% that happen in parks? The statistics don't support the logic of the statute, but that's not all we need to consider. Even if we take the statistics away, when we think about... I think a main point I'd like to make is the other statute that's on the books has been challenged before. It was challenged in Diesel Horse, the 5th District opinion. And when the court upheld the statute that was formerly 11-9.4A, currently 11-9.3A10, and again, it prohibits... A sex offender can be in a park, can be at the Art Institute, Shedd Aquarium, Museum of Science and Industry. A sex offender can do... A child sex offender or sex predator can do all of these activities that are listed in the brief that our current statute prohibits. They just cannot contact, communicate, or approach a child, not their own, in a park unless their child is present. That is targeted legislation. When the Diesel Horse Court upheld that statute as not being overly broad, it did so. It specifically said the statute is not overbroad because it does not prohibit a child sex offender from being in a public park and enjoying its amenities, exactly what our statute does do. Our statute has no limiting provisions whatsoever that tailor it to the harm it's intending to prevent the way other statutes that are similar... When we cut through everything, whether an individual legislator over there voting for something for political reasons, which I have a tough time seeing the relevance of that, we come down to rational basis, right? Yes. And there is no rational basis for this statute. And why? Because we already have a statute that is targeted. It's not just whether... The question under rational basis review is not just whether is there any rational basis. It's also if there is, are the means too overbroad? Is the method reasonable? There might be conceivably. Maybe it's rational because kids sometimes go to certain parks at certain times, so maybe potentially a sex offense might be eliminated by a recidivist sex offender who is a stranger against a child in a park. Maybe. I can't prove it won't happen. The legislator hasn't proven that this will do anything to prohibit that. But that is not the only issue. I mean, the question is whether the method is reasonable. But don't you have to show that it's unconstitutional in all its applications? I think it's unconstitutional in every application. That's what you have to show is a facial challenge. Yes. So when you're talking about the offender that targets the child and so forth, aren't they covered by the statute too? I don't. There is no evidence that child victimization happens in parks. We don't have anything that says that. We have statistics about where child victimization does occur. We have nothing. I have not read one statistic in all of the studies of which there are some. So is it your position that the legislature has to have statistical evidence and statistical proof? No. My position is that if the legislator wants to strip an entire subclass of people of their constitutional rights as citizens and taxpayers, people who have already paid the penalty for their crime, if they want to do that, then the method has to be reasonable. And the method here isn't reasonable because it's just too overbroad. It's not targeted to the harm it's aimed at preventing. It de facto prohibits them from doing a huge amount of activity that has no connection to preventing a child sex event. I mean, cooking classes. The Chicago Park District, for example, has thousands of adult-only classes, cooking classes, language classes, ballet classes. You cannot put... Ms. Stroh, you mentioned the other statute that permits an offender to be in certain places. Now, aren't those two statutes kind of the same? Absolutely. That one is rendered completely redundant by our statute, and that statute has already been challenged and has been upheld. Well, this statute that we're dealing with actually wipes that statute clear of doing anything. But if we wipe this statute, which is unreasonable and irrational, we have a statute that is targeted at the actual conduct it's... But today, if an offender does what that statute permits, they will be arrested because they're not supposed to be in any park according to this statute. Right, right. Now, the First District is charging people under that statute because of the Third District's opinion in Papatone. Because the Third District found... I mean, I believe it asked why they're using 11-9.3A10 to charge people as opposed to 11-9.4 1B. But anyway, I just think that... Let me just ask this. A large portion of your argument has been under overbreadth, right? And there's no First Amendment claim here. Overbroad is a word in the dictionary that doesn't only apply to First Amendment analysis, and I am not making a First Amendment challenge. I would say First Amendment rights are absolutely impacted by this statute, and they wouldn't be under 11-9.3A10. I mean... But you never raised it. I did not raise a First Amendment issue. First Amendment rights are impacted, absolutely. And I'd like to just point and read to this court a quote from the Packingham decision, which sort of singled out the importance of parks in our society. And it stated, A park is a quintessential form of exercise of First Amendment rights. Even in the modern era, parks are still essential venues for public gatherings, to celebrate some views, to protest others, or simply to learn and inquire. And I'd go a step further. May I just be really clear here? So you are making a First Amendment challenge? Pardon me? You're making a First Amendment challenge. No, I'm saying... Then why are we talking about this? What I'm doing with talking about how First Amendment activities occur in parks is that I'm saying it speaks to the statute's overreach. It impacts so many different types of rights, some of which are fundamental, others which just are due one by virtue of being a citizen and a taxpayer. And just speaking to its over-breath, its unreasonableness, and that the sweep is just so extreme, that it impacts one's ability to march in a political rally or go to the Women's March coming up in a month. One is prohibited from doing those types of activities  When other statutes have been upheld, these presence restriction statutes, like the Stork was a school zone presence restriction statute, they've been narrower. That statute prohibited a child sex offender from being present in a school zone if a person under the age of 18 were present, and unless they had permission to be there. So it had limiting provisions and exceptions. It was less broad. Doe v. Lafayette is the Seventh Circuit case that upheld a town ordinance banning a single individual from a town park. And when the majority did so, it specifically said, this is reasonable because Doe has presented a demonstrable threat to children. He's an admitted sex addict who just went to the park to engage in psychiatric brinkmanship. He's admitted to a near relapse when he was at the park looking at children. This makes sense. It has a reasonable fit with Doe. Our statute is just, it's so sweeping. As Justice McDade found, the sweep of the statute is extraordinary. It's just not, it does not jive with logic. On the statistics point, you mentioned that the 25 percent came from opposing counsel. But on page 10 of your brief it says, so although some politicians cite recidivism rates for sex offenders that are as high as 80 to 90 percent, the available science refutes those assumptions, showing instead that most, three out of four former sex offenders do not reoffend, and most sex crimes are not committed by former offenders. So it seems that even on the statistical level, and maybe they cited the same thing, I don't know, but you did say in your brief that it's one out of four, 75 percent that do not. I got your crack. I think that's from Human Rights Watch. There is another, I mean, that's not in the statistics section, I don't believe. But as mentioned, the statistics do vary. And I see that my time is up. They've been set as low as five and as high as 25. They're not really germane to the argument as to why the statute's unreasonable. And because the statute lacks any limiting provision whatsoever, provides no exception for a sex offender to gain permission to park for a legitimate reason, of which parks encompass so much and so much is an activity, the statute fails to meet its burden of not being an arbitrary exercise of police power and it asks that this court affirm. Thank you. Thank you. A reply? Mr. Malamuth, I suspect you'll get to it, but I would like you to address the argument made with respect to the Fifth District-based easel horse and its comments on the predecessor statute that seem to have been carried over into 11-9.3 and the possibility of a conflict between the two statutes. How do we take that into consideration in analyzing this case? Sure, Your Honor. Well, first of all, again, I'm Alden Malamuth, back on behalf of the people. So with respect to the easel horse argument and the argument that there was a predecessor statute which prohibited the presence only when there are children in the park, that was something that the legislature considered. And, in fact, in the debates, there's testimony that, look, we don't think this is a workable statute as written. We don't think this was the judgment. We don't think, the legislature doesn't think, that it's workable. It's not workable to sit and wait to have a child sex offender be in a park and wait to see a child enter and then run out of the park, that it's both unworkable and hard to enforce because what if there's a child that's not in the immediate view of the child sex offender? But 11-9.3A10 is still on the books, right? Well, it's still on the books. And, first of all, statutes can be redundant. We don't strike those down under the rational basis test. That's not the issue. There's no sort of challenge here that there's some kind of vagueness problem that it seems to be unauthorized, or it seems to be authorized under this statute. Even if it were true that all the activity banned, prohibited by one statute, is also banned by another, that's not a reason to strike the statute down. It's also not clear that the statutes are totally redundant. Counsel, isn't it important for statutes to inform people of how they're supposed to conduct themselves? And one statute says you can do this, and the other statute says you can't. Absolutely not. First of all, Your Honor, that's not what the statute says. The statute doesn't say you can enter all public parks as long as there's no children. That's not what the statute says. The current statute doesn't even mention children. Section 9? The statute issued in this case. That's exactly right. The statute doesn't mention children. It prevents child sex offenders from going into public parks. Any parks. That's right. But the other statute prevents child sex offenders. Public parks. Public parks. Not any park, Your Honor. Public parks. Counsel, parks, right? Public parks, Your Honor. Okay, public parks. Private parks, parks on, and this is exactly why this is important, because private parks might be not on public land. For instance, there might be a park that's accessible to the public on a private development. That's actually covered by the other statute, not covered by this statute. So the statutes aren't completely redundant. They cover somewhat different things. There's overlap. So, for instance, if there's a park on private land in the middle of a condominium development, this is actually the case in Chicago and in other places, and that statute, there's a restriction based on that. That would not be covered by this statute. The statute had issued here. But under the other statute, it would be true that a child sex offender cannot enter that park with a child if a child is present and contact that child. So it's simply not true that these statutes are completely redundant or overlap entirely. That's just not right. So what you're saying is the legislature made a rational decision there at 11-810, one with the requirement of children being there. It's rational to have that as a law. But it's also rational not to have that provision with restricting it to when children are in the park. Well, yes, Your Honor. Both statutes are rational. It's rational to prevent child sex offenders from entering public parks. That's a rational rule. It's also rational to prevent child sex offenders in parks that are publicly accessible, but on private land, from approaching children in those parks. Those are both rational laws, and such would pass the rational basis test. First of all, even if we were to think there's some sort of logical disconnect there, that's not a reason to hold this statute irrational. I mean, that's been clear for Williamson Optical. The United States Supreme Court expressly said the statutes don't have to be 100% logically. Even the same statute doesn't have to be 100% logically consistent. So never mind looking at two different statutes and saying, well, if this is the reason here, shouldn't you make the statute say X there? That's not the task that courts undertake. And if you look at the argument, the basic argument that the defendant is making, it's kind of two basic arguments. One is that it's overbroad. There are these circumstances in which we might think that the statute shouldn't apply or that it might be protected under the First Amendment. But as has been discussed, overbreadth, and the Packingham case was a First Amendment case, is not relevant to rational basis. Another defendant was free to raise a First Amendment argument here and didn't do so. Overbreadth simply isn't relevant. The second one is the individualized risk assessment. Now, the argument is, OK, well, 75% don't re-offend. 25% do re-offend. So hence, it's somehow irrational to exclude everyone. That's not the kind of irrational. And in fact, this was the exact argument. One of the arguments raised in Minnis, which was a First Amendment case under intermediate scrutiny, a more exacting level of scrutiny. And this court rejected that. They said, you don't have to have an individualized risk assessment of whether this particular sex offender is going to use the Internet to commit a child sex offense. We don't have to say whether this child sex offender used the Internet in the first place as part of the child sex offense, or even whether this particular child sex offender is likely to re-offend. What this court said in Minnis was that the legislature is entitled to use the conviction of a child sex offense as evidence that there's a risk of recidivism, and that it is rational to prohibit or to have certain restrictions or reporting requirements of these child sex offenders. And again, these arguments, as was brought up, would apply to all sex offender registry rules. We have to have an individualized assessment before we add any legislation or any rules governing child sex offenders or sex offenders in general. One quick last note about the innocent conduct doctrine. That covers conduct that is not germane to the ill that the legislature was attempting to address. Here, the conduct is exactly the type that the legislature was intending to address. To prevent child sex offenders from being in parks where children are playing. There might be a policy judgment that that's not the right rule. There might be a policy judgment that the risk isn't high enough. Those are policy judgments, legislative policy judgments, that are best left to the legislature. We don't step in and act as a super legislature. Courts don't step in and judge the wisdom. And defendants are free, and amici are free, to pursue these arguments in the legislature, with the executive, as they are doing. And to come up with a different balance. That's not the question here. It's a facial challenge to, and it's because it's a substantive due process challenge, when there's no fundamental interest involved, no suspect classification involved. So it's the rational basis test. And this statute clearly passes. So, unless there are further questions, we would ask the court to reverse the judgment. Thank you. Seeing no questions, thank you. Case number 122034, People v. Pepitone, will be taken under advisement as agenda number two. Mr. Malamud, Ms. Stroll, we thank you for your arguments today. You are excused.